**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
JULIE LAMOTHE and JUSTIN LAMOTHE

                Plaintiffs,

          -against-

THE TOWN OF OYSTER BAY, THE TOWN
OF OYSTER BAY DEPARTMENT OF
PLANNING AND DEVELOPMENT,
TIM ZIKES, Individually and in his Official
Capacity, MIKE RATHE, Individually and in his
Official Capacity, JOE SPANO, Individually and
in his Official Capacity, LYNN BERGE,
Individually and in her Official Capacity,
JACK LIBERT, Individually and in his Official
Capacity, JIM LAREN, Individually and in his
Official Capacity, and STEPHEN MORI,
Individually and in his Official Capacity,

                Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
08-cv-2078 (ADS)(AKT)

**APPEARANCES:**

**Julie Lamothe and Justin Lamothe**
*Plaintiffs Pro Se*
59 Larabee Avenue
Oyster Bay, NY 11771

**Goldberg Segalla LLP**
*Attorney for Defendants the Town of Oyster Bay and*
*the Town of Oyster Bay Department of Planning and Development*
200 Old Country Road,
Suite 210
Mineola, NY 11501
        By:    Christopher Kendric, Esq., Of Counsel

**Sinnreich & Kosakoff LLP**
*Attorney for Defendants Tim Zikes, Mike Rathie, Joe Spano,*
*Lynn Berge, Jack Libert, Jim Laren, and Stephen Mori*
267 Carleton Avenue
Central Islip, NY 11722
   By: Timothy F. Hill, Esq., Of Counsel

**SPATT, District Judge.**

   On May 21, 2008, Plaintiffs Julie Lamothe and Justin Lamothe ("the Plaintiffs")

commenced this action against the Town of Oyster Bay (the "Town"), the Town's

Department of Planning and Development, and several municipal employees (collectively

the "municipal defendants"), as well as against individual Defendants Vincent Acquilino

and Diane Aquilino, seeking damages associated with defects in a home purchased in 2005.

Following this Court's dismissal of all claims against the Aquilinos and certain claims

against the municipal defendants, the only viable claims that remain against the municipal

defendants are for deprivation of the Plaintiffs' constitutional rights to equal protection of

the laws and substantive due process, pursuant to 42 U.S.C. § 1983, and aiding and abetting

those violations.  Presently before the Court is the Plaintiffs' motion to amend their

complaint to assert: (1) certain additional facts that they claim their two prior counsels

failed to present to the Court in the initial complaint; and (2) a number of new causes of

action against the remaining Defendants, mainly grounded in fraud and negligence, that are

related to the same underlying events as the initial complaint.  For the reasons set forth

below, the Court denies the Plaintiffs' motion.

# I. BACKGROUND

## A. Factual Background

The following facts are drawn from the Plaintiffs' proposed amended complaint ("PAC"). For purposes of this motion to amend, the Court accepts all well-pleaded, nonconclusory factual allegations as true and treats them in the best light for the Plaintiffs. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009); Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009).

On April 12, 2005, the Plaintiffs purchased a home located at 59 Larabee Avenue, Oyster Bay, New York, from a town employee named Vincent Aquilino and his wife, Diane Aquilino. The Plaintiffs allege that they were unaware that the home had a "history of structural problems caused by severe flooding and hydraulic pressure from various causes" due to its close proximity to the Long Island Sound. (PAC ¶ 14.) By October 2005, the Plaintiffs became aware of the recurrent substantial flooding in the basement, which caused significant damage to the home.

Plaintiff Julie Lamothe began to investigate the cause of the flooding, and eventually discovered that many inspections, certifications, and permits required by the State and the Town were absent from the Town records. The Plaintiffs allege that the Town allowed its employee, Vincent Acquilino, to renovate the home at issue without: (1) a certificate of approval from the Engineer, an excavator license, and permits from licensed craftsmen, as required under Town ordinances; (2) a Home Improvement License, as required by New York State; and (3) a plethora of other licenses and permits. The Plaintiffs' main allegation is that the Town issued a Certificate of Occupancy for the

property on March 17, 2005, even though it knew or should have known that the relevant property did not comply with the New York State Residential Code and Town building codes.  According to the Plaintiffs, "Acquilino has confirmed that he [was] aware of the violations but that the 'Town of Oyster Bay let him do it.'" (PAC ¶ 20.)  The Plaintiffs further contend that they reasonably relied upon the representation of the issuance of the final Certificate of Occupancy as evidence that the property was in compliance with the codes.

As a result of the flooding, the Plaintiffs claim that they have suffered significant damages.  First, the Plaintiffs have expended $2,500.00 to purchase commercial sump pumps to abate the flooding.  Second, the flooding itself has caused over $30,000.00 worth of damage to the home.  Finally, the Plaintiffs assert that they purchased the home for $700,000.00, which they would not have done without the Defendants' fraudulent and material misrepresentations.  In addition, Plaintiff Julie Lamothe now alleges for the first time in the proposed amended complaint that she has a cracked disc in her lower back, which she suffered as a result of combating the extensive flooding.

After the Plaintiffs began to investigate the Town's alleged failures to observe and enforce the proper procedures and building codes, the Plaintiffs claim that in retaliation the town subsequently harassed and threatened the Plaintiffs.  For example, the Plaintiffs claim that in response to an alleged illegal apartment located above the detached garage, the Town has issued violations for a lack of a Certificate of Occupancy and brought the Plaintiffs to court twenty-three times.  The Plaintiffs also maintain that the Town has forced them to destroy or remove the home's garage, bath, staircase, and plumbing.

**B. Procedural History**

As stated above, on May 21, 2008, the Plaintiffs commenced this action against the municipal defendants and the Acquilinos, the sellers of the home.  The Plaintiffs asserted three state law claims against the Acquilinos for common law fraud, aiding and abetting fraud, and conspiracy to commit fraud.  The Plaintiffs asserted the same aiding and abetting and conspiracy claims against the municipal defendants.  In addition, the Plaintiffs alleged two 42 U.S.C. § 1983 federal causes of action against the municipal defendants.

On July 10, 2009, the Court granted the Aquilinos' motion to dismiss the cause of action for fraud, finding that the allegations lacked the requisite particularity under Federal Rule of Civil Procedure 9 and that the specific disclaimer in the Residential Contract of Sale between the parties bolstered the application of New York's rule of *caveat emptor*. The dismissal of the fraud cause of action necessarily led the Court to also dismiss the causes of action of aiding and abetting fraud and of civil conspiracy to commit fraud asserted against all of the Defendants, because those counts could not stand alone once the main fraud claim against the direct actor was dismissed.  Therefore, the only claims that currently remain are against the municipal defendants for: (1) Section 1983 causes of action for depriving the Plaintiffs of their constitutional rights to equal protection of the laws and substantive due process, and (2) aiding and abetting such violations.

On January 8, 2010, after the Court rendered its decision on the motion to dismiss, the Plaintiffs' counsel Steven Morelli, Esq. moved the Court to substitute Andrew Crabtee, Esq. as the attorney of record for the Plaintiffs, which the Court granted the following day.

Mr. Morelli did not enunciate to the Court any explanation for the substitution.  However, the Plaintiffs note that they now have a legal malpractice suit pending against Mr. Morelli stemming from Mr. Morelli's representation of them in this case.

Subsequently, on August 31, 2010, Andrew Crabtree also moved the Court for leave to withdraw as counsel of record.   Mr. Crabtree stated in his Declaration in Support of Application for Leave to Withdraw as Counsel of Record on August 31, 2010 that the reasons for his withdrawal were his "inability to effectively communicate with [his] clients, and their disregard of [his] advice, including Plaintiffs' numerous unauthorized *ex parte* communications with this Court."  (Docket Entry No. 86-2.)   Following Mr. Crabtree's withdrawal, over the next eleven months, the Plaintiffs attempted to procure new counsel. In a final letter to the Court dated July 1, 2011, Plaintiff Julie Lamothe noted that they were "speaking to other attorneys" but were having trouble finding "suitable legal counsel." (Docket Entry No. 100.)  She also wrote that "there will be a document on your desk by Monday, July 25th, if I have to write it myself."  (Docket Entry No. 100.)  The Plaintiffs thereafter filed a Motion to Amend the Complaint and no additional attorney has made an appearance in this case.  Therefore, apparently, the Plaintiffs are now proceeding *pro se*.

**C. The Present Motion**

On July 27, 2011, the Plaintiffs moved this Court to file an amended complaint. Their proposed amended complaint is verbose, to say the least. Rather than being a short and plain statement, the Plaintiffs' a proposed complaint is incredibly lengthy and the causes of action are not stated with any clarity or precision.  It is a difficult task to discern which facts support which claims and to track which allegations are redundant and which

are new.  Nonetheless, the proposed amended complaint can essentially be read as attempting to accomplish two tasks: (1) under the First and Second Causes of Action, to restate the original Section 1983 claims against the municipal defendants for violation of equal protection and substantive due process rights, along with aiding and abetting those violations; and (2) to assert new causes of action, Three through Six, asserting various state law claims against the municipal defendants for negligence, fraud, breach of implied contract, personal injury, and various violations of the Town ordinances.

Due to the fact that the Plaintiffs are proceeding *pro se*, the Court will hold the amended complaint to a less stringent standard than formal pleadings drafted by lawyers. Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 176, 66 L. Ed. 2d 163 (1980); Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595, 30 L. Ed. 2d 652 (1972).   The Court should "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); Cole v. Fischer, 379 F. App'x. 40, 41 (2d Cir. 2010).  The Court reads the proposed amended complaint as asserting the following causes of action.

**1.  The Plaintiffs' Section 1983 Claims**

In the First and Second Causes of Action of the proposed complaint, the Plaintiffs restate two claims from their original complaint against the municipal defendants for deprivation of the Plaintiffs' constitutional rights to equal protection of the laws and substantive due process, pursuant to 42 U.S.C. § 1983, and aiding and abetting such violations.

### 2. The Plaintiffs' Proposed State Law Claims

In addition to re-alleging the Section 1983 claims from the original complaint, the Plaintiffs also seek to assert several new state law claims against the municipal defendants.

First, the Court reads the proposed amended complaint as asserting a claim directly against the municipal defendants for common law fraud (the "fraud claim"). This is in contrast with the original complaint, in which the Plaintiffs did not articulate a claim of fraud aimed directly against the Town or its employees. The Court interprets the Plaintiffs as asserting a fraud claim based upon several causes of action in the proposed complaint. First, in the Plaintiffs' Third Cause of Action, it states that the "Plaintiffs had justifiable reliance on certain representations relating to the building permits, inspections and certificate of occupancy for a home that was completely renovated from top to bottom only weeks prior to their purchase. . . . These misrepresentations and active concealment amounted to Fraud." (PAC ¶ 45B.)

In addition, in the Plaintiffs' Fifth Cause of Action, they again assert "active concealment, fraud, misrepresentation, false pretenses and false representations . . . ." (PAC ¶ 51.) Based upon these two causes of action, it appears that the Plaintiffs are attempting to pursue a claim against the municipal defendant for common law fraud. The Plaintiffs' argument is that when the Town issued the Certificate of Occupancy, it in effect represented that it had complied with its own administrative ordinances and New York State Building Code requirements. The Plaintiffs state that they justifiably relied on this misrepresentation when entering into the Contract of Sale to purchase the home. However,

the Plaintiffs allege that the Town committed numerous violations of these codes and thus this representation was false.

Second, the Plaintiffs appear to be pursuing a claim against the municipal defendants for negligence (the "negligence claim"). This is based upon several clauses in the proposed complaint. First, in the Plaintiffs' Third Cause of Action, the Plaintiffs state that the Town's negligence is "one of failure to act with the necessary care and skill in the exercise of their duties as servants of the municipality and of its constituents." (PAC ¶ 45A.) The Plaintiffs further assert in the Fourth Cause of Action that because the Town "negligently and carelessly permit[ed] the above mentioned premises to be so constructed, without the aforementioned controls, the Plaintiffs were left with a premises that is and was dangerous and uninhabitable." (PAC ¶ 49.) Also, in the Fifth Cause of Action, the Plaintiffs again claim that the Town was grossly negligent in granting Vincent Acquilino building permits when he did not possess the required documentation. (PAC ¶ 61.)

Third, the Plaintiffs also appear to be pursuing an implied contract claim against the municipal defendants (the "contract claim"). In particular, they assert that the Town had an "implied contract with each of its citizens to follow standard procedures promulgated by the [Town] itself and apply the New York State Building Code and the [Town] Building Codes . . . ." (PAC ¶ 44.) The Plaintiffs then go on to state fifty-one ways in which the Town failed to apply its own building codes to the construction of the Plaintiffs' home.

Fourth, Plaintiff Julie Lamothe alleges, for the first time in this case, that she suffered a back injury in the course of dealing with the flooding in her basement (the "personal injury claim"). Finally, the Plaintiffs also allude to violations of the Consumer

Protection Act and the Consumer Fraud Act, which the Court reads as asserting claims pursuant to the New York General Business Law § 349 ("GBL § 349").

### 3. Arguments For and Against Amendment

The Defendants oppose the Plaintiffs' motion to amend on the grounds that the amendment is futile; that the motion is untimely; that it will result in undue delay; and that it will cause the Defendants undue prejudice. At its core, the Defendants' argument, as stated in their joint opposition to Plaintiffs' motion to amend their complaint dated August 9, 2011, is that the Plaintiffs are utilizing Federal Rule of Civil Procedure 15 in an attempt "to start the case over" as *pro se* litigants. (Docket Entry No. 103.) With regard to whether an amendment would be futile, the Defendants contend that the proposed amendments merely seek to resurrect and add volume to claims that were dismissed by this Court more than two years ago. As to untimeliness, the Defendants maintain that the Plaintiffs have waited too long to move to amend. They point out that discovery in this matter closed on November 9, 2009, after two prior extensions by United States Magistrate A. Kathleen Tomlinson at the Plaintiffs' request. In addition, the Defendants emphasize that the case is already at the summary judgment stage, as Rule 56.1 Statements have been exchanged.

With regard to undue prejudice, the Defendants assert that granting the Plaintiffs leave to amend their complaint would require that discovery be reopened, because the entire course of discovery was geared towards only the Section 1983 claims that remained after the early dismissal of the other causes. Finally, the Defendants claim that any additional discovery, along with the ensuing delay in the case that would result, would be

unfair because the case is more than three years old and summary judgment procedures have already been initiated.

In response, the Plaintiffs note that the reason why these claims were not previously filed is because of the alleged inadequacies of their first counsel—against whom they now have a malpractice suit—and the similar alleged inadequacies of their successor counsel. The Plaintiffs do not speak directly to the potential unfair prejudice to the Defendants that may result from the amendment. Instead, the Plaintiffs emphasize in their response to the Defendants' Opposition to amend the complaint dated August 15, 2011, that their purpose for filing this amended complaint is "to start this case over from the beginning" and "to correct what went miserably wrong." (Docket Entry No. 106.)

## II. DISCUSSION

### A. Whether the Plaintiffs have Shown Good Cause to Modify the Scheduling Order— Fed. R. Civ. P. 16(b)

#### 1. The Legal Standard

Despite a number of adjournments to the deadlines for completion of discovery, the operative scheduling order in this case identifies March 2, 2009 as the deadline for filing a motion to amend a pleading. The Plaintiffs filed the instant motion to amend on July 27, 2011, more than two years after the deadline. As such, the Court must consider Fed. R. Civ. P. 16(b) ("Rule 16(b)"), which "may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 243 (2d Cir. 2007); see Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

"Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (quoting older versions of Rule 15(a) and Rule 16(b)).  "[A] finding of 'good cause' depends on the diligence of the moving party."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).  To satisfy the good cause standard "the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met."  Sokol Holdings, Inc. v. BMD Munai, Inc., No. 05–CV–3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (citing Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003)).  However, the good cause standard is not satisfied when the proposed amendment rests on information "that the party knew, or should have known, in advance of the deadline." Id. (collecting cases).

"[T]he rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'"  Parker, 204 F.3d at 339–40 (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 amendment, discussion of subsection (b))).  The decision as to whether to permit an amendment is soundly vested in the discretion of the district court.  See Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 235 (2d Cir. 1995) ("it is rare for an appellate court to disturb a district court's discretionary decision to allow amendment.").

**2. As to the Plaintiffs' Allegations of Prior Inadequate Counsel**

The sole reason articulated by the Plaintiffs for filing this amended complaint so late in the proceedings is the alleged inadequacies of their prior counsel, Steven A. Morelli, against whom they are now pursuing a legal malpractice suit.  The Plaintiffs state that they brought their cause to that counsel, but he failed and refused to adequately present the Plaintiffs' cause to the Court.  In addition, the Plaintiffs claim that their subsequent counsel was similarly ineffective.  However, the Court notes that the Plaintiffs do not indicate whether they have filed a legal malpractice suit against him.

"[A]ttorney neglect, carelessness, or oversight is not a sufficient basis for a court to amend a Scheduling Order pursuant to Rule 16(b)."  Multi-Judice, S.A. v. Snapple Beverage Corp., No. 02-CV-4635, 2005 WL 1138470, at *2 (S.D.N.Y. May 12, 2005) (citing AMW Materials Testing, Inc. v. Town of Babylon, 215 F.R.D. 67, 71 (E.D.N.Y. 2003) ("Counsel's inadvertence or oversight is not good cause for the purposes of Rule 16."));  Bracy v. State of New York, et al., No. 98-CV-3308, 2001 WL 1550666, at *1 (S.D.N.Y. Dec. 5, 2001) ("If oversight alone constituted 'good cause' to modify a scheduling order, all scheduling orders would quickly become meaningless.").  Even "[t]he failure of an attorney to investigate his or her client's claims diligently will not constitute good cause."  In re Fosamax Prods. Liab. Litig., Nos. 06-MD-1789, 06-CV-9949, 2009 WL 137087, at *5 (S.D.N.Y. Jan. 21, 2009).

The Plaintiffs claim that their initial attorney refused to grant their request to present certain information to the Court.  However, a prior attorney's actions are binding on the successor counsel, which in this case are the Plaintiffs themselves.  See Kenny v.

County of Suffolk , No. 05-CV-6112, 2008 WL 4936856, at *1 (E.D.N.Y. Nov. 17, 2008) (finding that the failure of plaintiff's former counsel to seek discovery did not provide good cause for delay under Fed. R. Civ. P. 16(b)).  In addition, the Plaintiffs voluntarily chose the first attorney as their representative and therefore cannot escape insufficiencies in their case by claiming negligence or omissions on the part of their attorney.  Link v. Wabash R.R. Co., 370 U.S. 626, 633–34, 34 n.10, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) (noting in the context of a Rule 41(b) failure to prosecute that "if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice."); see also Chem. Bank v. Affiliated FM Ins. Co., No. 87-CV-150, 1993 WL 526230, at *4 (S.D.N.Y. Dec. 14, 1993) ("Ineffective counsel . . . is not an adequate justification for a delay in bringing a motion to amend. (quoting Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)). Of course, the Court does take into account the Plaintiffs' *pro se* status, and that there should be no forfeiture of important rights because of their lack of legal training.  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983).  Nevertheless, this "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  Id. (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

Accordingly, the Court finds that "good cause" does not exist in the instant case to satisfy the standard under Rule 16(b) as a result of their counsel's alleged inadequacies. See Ansam Assocs., Inc., 760 F.2d at 446 (finding insufficient reason for prejudicing the defendants by forcing them to proceed to trial, post-discovery, on a new complaint, even withstanding the inadequacies of prior counsel).

### 3. Whether Information was Known in Advance of the Deadline

Another potential basis for "good cause" under Rule 16(b) may exist if the proposed amendment rests on information that was not available prior to the deadline to amend the pleadings.  See Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland, No. 09-CV-4622, 2010 WL 4968247, at *4 (S.D.N.Y. Nov. 24, 2010).  However, as aptly stated by the Second Circuit in the context of an amended jury charge under Rule 16,

> [t]hough a "court may permit a pretrial order to be amended when the danger of surprise or prejudice to the opposing party is small and a failure to amend might result in an injustice to the moving party . . . if the evidence or issue was within the knowledge of the party seeking modification at the time of the [deadline to amend] . . . then it may not be allowed."

Potthast v. Metro-N. R.R. Co., 400 F.3d 143, 154 (2d Cir. 2005) (quoting 6A Wright & Miller, Federal Practice and Procedure § 1527 (2d ed. 1990)); see Parker, 204 F.3d at 340–41 (upholding a finding that plaintiff had not shown good cause under Rule 16(b) where plaintiff was aware of the relevant facts "prior to and throughout the course of this litigation").

The Plaintiffs state in their Affirmation in Support of Motion to Amend Complaint filed on July 27, 2011 that their proposed complaint is "new light" being shed on the case because many of the relevant facts, evidence, and supporting documentation were "blatantly ignored, disregarded, never read nor incorporated" into the original complaint. (PAC ¶ 3.)  If the Plaintiffs were aware of the facts underlying their claims, it is well established that the Plaintiffs have not established "good cause" under Rule 16(b).  See Parker, 204 F.3d at 340–41.

On the other hand, in an opposition letter to the Court dated August 9, 2011, the Plaintiffs state that "it took years to put the pieces of the puzzle together" and that "[m]any items were tipped off to from the depositions."  (Docket Entry No. 106.)  Regardless, even if the Plaintiffs have learned new facts through the discovery process, this does not automatically entitle the Plaintiffs to amend.  See Triangle Indus., Inc. v. Kennecott Copper Corp., 402 F. Supp. 210, 212 n.1 (S.D.N.Y. 1975) (noting that even if the trial court has authorized discovery on a particular subject, this does not automatically justify an amendment with regard to that subject); Apollo Theater Found. V. W. Intern. Syndication, No. 02-CV-10037, 2005 WL 1041141, at *19 (S.D.N.Y. May 15, 2005) (finding good cause arguments transparent where the plaintiff's proposed claim was based on information within its control before initiation of the action).  Furthermore, the Plaintiffs do not articulate which pieces of information have surfaced and when they came to light. Without specific information regarding the new evidence at issue and the timing of its discovery, the Court is unable to find that the Plaintiffs have demonstrated good cause for their failure to comply with the Scheduling Order.

Therefore, the Court does not find that the Plaintiffs have been able to establish good cause for their failure to timely amend their complaint pursuant to the Scheduling Order.

**B. Whether the Plaintiffs May Amend Under Fed. R. Civ. P. 15(a)**

**1. The Legal Standard**

Even assuming, arguendo, that the Plaintiffs were able to demonstrate "good cause," a party still has the burden to show that the proposed amendment is permissible under Fed. R. Civ. P. 15 ("Rule 15").   Rule 15(a)(2) states in pertinent part:

> Amendments Before Trial. . . . a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

A court should deny leave to amend only upon "undue delay, bad faith or dilatory motive on the part of the [moving party], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the [non-moving party,] ... [or] futility."  Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603–04 (2d Cir. 2005) ("a Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.") (internal quotations and citation omitted).  Amendments are generally favored because "they tend to facilitate a proper decision on the merits." Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998).  However it is ultimately "within the sound discretion of the court whether to grant leave to amend."  John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994) (citing Foman, 371 U.S. at 182, 83 S. Ct. 227).

### 2. The Plaintiffs' *Pro Se* Status

Generally, a *pro se* complainant is fairly freely afforded an opportunity to amend his or her complaint.  Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984).  This is true even when a plaintiff makes such a request after the court has entered a judgment dismissing the original complaint.  District courts outside of this Circuit have found that an amendment was appropriate as long as two years after the initial filing, partly due to the difficulties a plaintiff had with short-term legal representation and the burden of proceeding *pro se*.  See Hisler v. Gallaudet Univ., 206 F.R.D. 11, 13 (D.D.C. 2002).  However, even a *pro se* complaint must plead facts sufficient to show a legal wrong has been committed for which the plaintiff may be granted relief.

### 3. Whether the Plaintiffs' Proposed Amendments are Futile

The Court first considers whether permitting the Plaintiffs' motion to amend their complaint would be futile.  Under this Court's discretion, it may deny a proposed amendment which would be futile, or which does not establish a sufficient or cognizable claim, or which has no merit.  Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied.")  Accordingly, an amendment is futile where it is legally insufficient on its face so that it could be defeated by a motion to dismiss.  Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002).  A claim can only withstand a Rule 12(b)(6) motion if it contains enough allegations of fact to state a claim for relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

The Court will first assess whether permitting the proposed amendments regarding Plaintiffs' Section 1983 claims would be futile.  Next, the Court will address Plaintiffs' proposed new state law claims against the municipal defendants.

### a.   As to the Plaintiffs' Section 1983 Claims

First, as to the Plaintiffs' Section 1983 type claims, the Court finds that the amended complaint is essentially a restatement of the still viable Section 1983 claims that were asserted in the initial complaint.  In the original complaint, the Plaintiffs alleged several instances of the Town "selectively enforcing statues, laws, rules and ordinances against [Julie Lamothe] and her son in retaliation" for Plaintiff Julie Lamothe's extensive investigations into the Town's involvement in the building and selling of the Aquilino's house.  (Compl. ¶ 42.)  The original complaint cites the Town's multiple inspections and harassment with regard to:  (1) the illegal garage apartment (Compl. 1 ¶ 45–48); (2) the forcing of the Plaintiffs to remove items being stored in the garage (Compl. 1 ¶ 49–50); and (3) several other unwarranted inspections and charges by the Town (Compl. 1 ¶ 51–66). The amended complaint largely recites these allegations in paragraphs 25–29.

It is not entirely clear whether the Plaintiffs have alleged new facts in support of their Section 1983 type claims because of the disjointed nature of the proposed complaint. However, to the extent the Plaintiffs have alleged any new facts, this Court still finds that permitting the filing of an amended complaint in this regard would be futile.  As set forth above, the Section 1983 causes of action are still viable.  If the Plaintiffs wish to assert minor facts that were not stated in the original complaint, they can do so in any future filings such as in an opposition to Defendant's Summary Judgment Motion.

19

**b.  As to the Plaintiffs' Proposed State Tort Causes of Action**

The Plaintiffs also allude to several new state law tort causes of action in the proposed amended complaint, such as common law fraud, negligence, and breach of implied contract.   New York General Municipal Law § 50-e requires that a plaintiff must file a notice of claim prior to the commencement of an action against a municipality, and must serve the notice of claim within ninety days after the claim arises.  See N.Y. Gen. Mun. Law § 50-e; Hardy v. N.Y. City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999).  Under New York law, a municipality such as the Town may not be liable for any damage to real or personal property sustained by reason of the negligence or wrongful act of such municipality or its officers, agents or employees whose conduct caused the alleged injury, unless a notice of claim is filed.  Id.  "[T]he general rule [is] that in a federal court, state notice-of-claim statutes apply to state-law claims." Id. (citing Felder v. Casey, 487 U.S. 131, 151, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988)).  It is undisputed that notice of claim requirements apply equally to state tort claims brought within the supplemental jurisdiction in federal court.  Jones v. Nassau County Sheriff Dep't., 285 F. Supp. 2d 322, 327 (E.D.N.Y. 2003).

The burden is on the plaintiff to plead and prove compliance with the notice of claim requirements for bringing certain tort actions against municipalities.  Russell v. County of Nassau, 696 F. Supp. 2d 213, 245 (E.D.N.Y. 2010).  In fact, "New York's law requires a plaintiff to plead in the complaint that: (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the

complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." <u>Hardy</u>, 164 F.3d at 793.

In this case, the Plaintiffs are alleging several new causes of action sounding in tort, including the fraud claim, the negligence claim, and the personal injury claim. However, the Plaintiffs here have failed to plead that they have complied with the notice of claim requirement for any of these causes of action, in either the original or the proposed amendment complaint. In fact, Plaintiff Julie Lamothe admits in her letter to the Court in the context of her personal injury claim that she did not file a notice of claim regarding her back issues. She also blames Mr. Morelli for the failure to file any notice of claims. However, as addressed above, this excuse is insufficient.

Under New York law, the appropriate remedy for a plaintiff's failure to comply with statutory notice of claim requirement before filing suit against a municipality is dismissal of the action, even if the claim is meritorious. <u>PBS Bldg. Sys., Inc. v. City of N.Y.</u>, No. 94-CV-3488, 1996 WL 583380, at *3 (S.D.N.Y. Oct. 10, 1996); <u>see Best v. Town of Clarkstown</u>, 61 F. App'x 760, 763 (2d Cir. 2003). Therefore, these three claims against the municipal defendants would be automatically subject to dismissal and, accordingly, permitting these amendments would be futile. <u>See</u> <u>Christian v. Town of Riga</u>, 649 F. Supp. 2d 84, 92 (W.D.N.Y. 2009); <u>Perez v. County of Nassau</u>, 294 F. Supp. 2d 386, 391 (E.D.N.Y. 2003).

Furthermore, the negligence claim would be subject to dismissal regardless of the Plaintiffs' failure to file a notice of claim. New York courts have held that for public policy reasons, municipal tort liability does not extend so far as to permit liability to the

21

general public for negligent breach of a public duty, absent a special relationship or duty to a particular plaintiff. See Harry-Lee v. City of New York, 746 F. Supp. 2d 546, 564 (S.D.N.Y. 2010) (noting the New York rule that an agency of government "is not liable for the negligent performance of a governmental function unless there existed a special duty to the injured person, in contrast to a general duty owed to the public") (internal quotations and citations omitted).  The failure to enforce provisions of a city's Administrative Code relating to building safety, even when the employees know of dangerous structural conditions of the building, still does not permit liability because such regulations are designed to protect the general public. Worth Distribs., Inc. v. Latham, 59 N.Y.2d 231, 237, 464 N.Y.S.2d 435, 451 N.E.2d 193 (N.Y. 1983); see Myers v. Moore Eng'g, Inc., 42 F.3d 452, 455 (8th Cir. 1994) ("Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established.  As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes."); Carter v. City of N.Y., No. 01-CV-13255, 2004 WL 3078698, at *10–11 (N.Y. Sup. Ct.  Dec. 16, 2004).

Here, the Plaintiffs have failed to allege any facts upon which this Court may premise the finding of special relationship giving rise to a special duty, and therefore the Plaintiffs would not be able to recover against the Town for its alleged negligence in enforcing its rules, regulations, or statutes.  Thus, because the negligence claim would not survive a motion to dismiss, it is futile notwithstanding any procedural issues.

### c.  As to the Plaintiffs' Other Proposed Causes of Action

Next, the Court addresses the Plaintiffs' implied breach of contract claim.  Under New York law, which would be applicable to an implied contract claim in this case, it is necessary to show evidence that the proper parties had the intention of making a contract, and also to show what the terms of such a contract were intended to be.  See, e.g., Maas v. Cornell Univ., 94 N.Y.2d 87, 93–94, 699 N.Y.S.2d 716, 721 N.E.2d 966 (N.Y. 1999) ("This type of [implied] contract still requires such elements as consideration, mutual assent, legal capacity and legal subject matter."); see also Bell v. Vill. of Stamford, 51 A.D.3d 1263, 1265, 857 N.Y.S.2d 804 (3d Dep't 2008) (dismissing a property owner's claims against the municipality for implied breach of contract based on zoning ordinances and building codes).

In the present case, there exists no indication of consideration or mutual assent, and thereby recovery by the Plaintiffs would be precluded under an implicit contract theory. Furthermore, the Plaintiffs' allegations in this regard sound more in negligence than in implied contract.  Their basic claim is that the town breached a duty to the Plaintiffs to enforce its building code and to issue building permits in a non-negligent manner to protect the safety and economic welfare of its citizens.  However, any such negligence claim would fail for the reasons previously stated above.

Lastly, the Court addresses the Plaintiffs' allegation that there is a violation of the Consumer Protection Act and the Consumer Fraud Act.  The Court interprets the Plaintiffs proposed pleading as referring to General Business Law § 349.  The essential elements of a cause of action alleging consumer fraud in violation of that provision are that the defendant

engaged in a consumer-oriented misleading practice and that the plaintiff was injured thereby.  Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, 85 N.Y.2d 20, 24, 647 N.E.2d 741, 623 N.Y.S.2d 529 (N.Y. 1995).  This Court finds that the Town was not engaging in a consumer–oriented practice by issuing building permits and that the Town's alleged misrepresentations did not constitute a "deceptive practice" within the meaning of the Act.  Therefore, because this GBL § 349 claim would not survive a motion to dismiss, the amendment is considered futile.

### 4. Whether the Plaintiffs Exhibited Undue Delay in Bringing the Motion to Amend

Even if the Plaintiffs have stated new and valid causes of action in their proposed amended complaint, the Court must still consider the timeliness of the motion to amend. "One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." H.L. Hayden Co. v. Siemens Med. Sys., 112 F.R.D. 417, 419 (S.D.N.Y. 1986) (collecting cases). Length of time, in of and itself, does not provide a basis to deny a motion to amend. See Daniels v. Loizzo, 174 F.R.D. 295 (S.D.N.Y. 1997) (finding that the plaintiff's nine-year delay in submitting proposed amendments to the complaint did not necessitate the denial of the motion to amend absent evidence of prejudice to the defendants and in light of plaintiff's *pro se* status and former inadequate representation); Rachman Bag Co., 46 F.3d at 234–35 (noting that a lengthy delay alone, in the absence of prejudice or bad faith, is not a sufficient basis to deny a motion to amend).  However, the motion to amend in the present case is judged by a more stringent standard because the request takes place after the deadline set by the scheduling order.  See Fed. R. Civ. P. 16(b).

In the instant case, the initial deadline for an amendment of the pleadings was ordered by Judge Tomlinson to be March 2, 2009.  This original scheduling order was subsequently amended to extend the deadline for completion of discovery until November 9, 2009.  However, there was never an application to extend the March 2, 2009 deadline to amend the pleadings.  Therefore, the deadline for this motion expired more than two years ago.  There must be some point in the proceedings at which there is a measure of certainty in order for the Court to efficiently manage its docket.  At this point in time, there is a strong need for finality in the pleadings.  In addition, the Defendants have already initiated summary judgment procedures and the parties exchanged Rule 56.1 Statements more than one year ago.  This issue of delay further weighs against permitting an amendment of the complaint.

The Plaintiffs have laid the responsibility for this delay on their two prior counsels, both of whom they allege were ineffective.  However, as previously stated, this does not constitute good cause to permit an amendment of the complaint.  "[K]eeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant."  Link v. Wabash R.R. Co., 370 U.S. 626, 634 n.10, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962).  Furthermore, their last attorney withdrew as counsel of record on September 20, 2010.  Although the Plaintiffs communicated to the Court that they were in the process of procuring counsel, the Plaintiffs did not ultimately make the determination to proceed *pro se* for ten months.  With the exception of sending *ex parte* communications to the Court, which were not considered, the Plaintiffs did not file anything with regard to this case for that entire length of time.  The

Plaintiffs have therefore had ample opportunities while retaining new counsel or acting pro se to attempt to cure whatever deficiencies they perceive were made in this case by prior counsel.  There is no excuse for this further delay.

Therefore, this Court finds that the Plaintiffs' delay in filing the Motion for proposed amended complaint constitutes undue delay.

### 5. Whether the Defendants will be Prejudiced if the Plaintiffs are Permitted to Amend the Complaint

In determining whether leave to amend should be granted, among the "most important" issues to consider is prejudice to the opposing party.  AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 725 (2d Cir. 2010) (internal quotations omitted).  In analyzing "prejudice," courts consider whether the amendment would: (1) require the opponent to "expend significant additional resources to conduct discovery and prepare for trial," (2) significantly prolong the resolution of the action, or (3) "prevent the plaintiff from bringing a timely action in another jurisdiction."  Monahan v. N.Y. City Dept. of Corr., 214 F.3d 275, 284 (2d Cir. 2000).  The main concern is undue or substantial prejudice—when the nonmoving party shows that it would be fairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered.  In other words, prejudice exists when a party wishes to overhaul its entire litigation strategy.

In the present case, the delay of the amending party is considered to be undue prejudicial delay because the action is occurring at a relatively late stage in the proceedings in a three year old case.  It would substantially alter the scope of discovery and would severely postpone the final disposition of the case.  As set forth in the prior discussion of

undue delay, this motion is occurring at a relatively late stage in the proceedings as

discovery has already been completed and summary judgment procedures have been

initiated.  As to the scope of discovery, the Plaintiffs are seeking to add several new causes

of action against the municipal defendants.  Although the undertaking of additional

discovery alone is not sufficient to warrant denial of a motion to amend, see S.S.

Silberblatt, Inc. v. E. Harlem Pilot Block – Bldg. 1 Hous. Dev. Fund Co., Inc., 608 F.2d 28,

43 (2d Cir. 1979), it may still be appropriate to deny leave to amend when a case has

progressed to such an advanced stage that discovery is nearly complete and the proposed

amendments would require additional extensive discovery.  See Sala v. Gates Const. Co.,

155 F.R.D. 414, 415–16 (E.D.N.Y. 1994); William Iselin & Co., Inc. v. Boardwalk

Regency Corp., 703 F. Supp. 1084, 1092 (S.D.N.Y. 1989).

Here, the dismissal of the non–Section 1983 type causes of action occurred at the

very outset of the case, so that the focus of the discovery proceedings thus far has been

geared towards only the Section 1983 claims.  If the Court were to permit the Plaintiffs at

this late stage to assert a number of new claims, it would require the Defendants to expend

further resources to defend against multiple new legal theories.  See White v. Conn. Dep't.

of Children and Families, 330 F. App'x. 7, 8–9 (2d Cir. 2009) (affirming district court's

denial of motion to amend complaint six weeks after scheduling order's deadline for filing

dispositive motions when the motion sought to include a number of new theories of

liability and would have been particularly prejudicial to the defendant).  Even the Plaintiffs

recognize that discovery would have to be reopened when they express their desire to start

the case over from the beginning.  The necessity of further discovery if this motion is granted would thereby necessarily substantially postpone the final disposition of their case.

Finally, this case was originally filed on May 21, 2008.  More than three years have passed and the Plaintiffs are only now seeking leave to amend the complaint "to start this case over from the beginning."  (Docket Entry No. 106.).  The "longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Evans v. Syracuse City Sch. Dis't., 704 F.2d 44, 47 (2d Cir. 1983) (internal citation and quotation omitted); see also Boyle v. Texasgulf Aviation, Inc., 696 F. Supp. 951, 956–57 (S.D.N.Y. 1988) (noting that the delay was so extensive that "even the smallest possibility of prejudice warrants denial" of motion to amend), aff'd, 875 F.2d 307 (2d Cir. 1989).  Accordingly, this Court finds three years to be an extensive delay that would be too prejudicial to the Defendants to allow amendment, even when weighed against countervailing considerations.

### III. CONCLUSION

The Court recognizes that the liberal allowance of amendments to pleadings is important to assure a party a fair opportunity to present claims and defenses, especially when *pro se* parties are involved.  See New Phone Co., Inc. v. City of N.Y., et al., Nos. 00-CV-2007, 03-CV-3978, 01-CV-3934, 01-CV-8506, 03-CV-192, 04-CV-354, 05-CV-1702, 2005 WL 1902119, at *5 (E.D.N.Y. Aug. 5, 2005).  However, "equal attention should be given to the proposition that there must be an end, finally, to a particular litigation." Id. (citing Friedman v. Transamerica Corp., 5 F.R.D. 115, 115 (D. Del. 1946)).  In weighing the Plaintiffs' *pro se* status and ineffective assistance of counsel allegations against the

untimeliness and futility of the motion, as well as the undue prejudice that would be imposed upon the Defendants, the Court finds that granting leave to amend is not warranted.  For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiffs' motion to amend the complaint is denied in all respects.

**SO ORDERED.**

Dated: Central Islip, New York
October 19, 2011

  _/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge