FILED
CLERK

12/27/2012 3:02 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
JULIE LAMOTHE and JUSTIN LAMOTHE,

                         Plaintiffs,

             -against-

THE TOWN OF OYSTER BAY, THE TOWN
OF OYSTER BAY DEPARTMENT OF
PLANNING AND DEVELOPMENT,
VINCENT AQUILINO, Individually and in his
Official Capacity, DIANE AQUILINO, TIM
ZIKES, Individually and in his Official Capacity,
MIKE RATHIE, Individually and in his Official
Capacity, JOE SPANO, Individually and in his
Official Capacity, LYNN BERGE, Individually
and in her Official Capacity, JACK LIBERT,
Individually and in his Official Capacity, JIM
LAREN, Individually and in his Official
Capacity, and STEPHEN MORI, Individually
and in his Official Capacity,

                         Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
08-cv-2078 (ADS)(AKT)

**APPEARANCES:**

**Vincent R. Fontana, Esq.**
*Attorney for the Plaintiffs*
1010 Franklin Avenue, Suite 200
Garden City, NY 11530

**Goldberg Segalla LLP**
*Attorney for Defendants the Town of Oyster Bay and*
*the Town of Oyster Bay Department of Planning and Development*
200 Old Country Road, Suite 210
Mineola, NY 11501
        By:    Christopher Kendric, Esq., Of Counsel

**Sinnreich & Kosakoff LLP**
*Attorney for Defendants Tim Zikes, Mike Rathie, Joe Spano,*
*Lynn Berge, Jack Libert, Jim Laren, and Stephen Mori*
267 Carleton Avenue
Central Islip, NY 11722
        By:    Timothy F. Hill, Esq., Of Counsel

**SPATT, District Judge.**

This case stems from the purchase of a home in the Town of Oyster Bay that unbeknown to the buyer had several structural deficiencies, which resulted in numerous building code violations and the subsequent loss of the value of the purchase price of the home.  While the Defendants characterize this as a mere case of "buyer's remorse", the Plaintiffs claim this case "is about greed, avarice, a builder's incompetence and the deliberate conduct of a Town that enabled it all to happen."  This Court has issued several decisions in this matter, including the partial granting of a motion to dismiss in 2009 and the denial of a motion to amend in 2011.  The only claims that remain at this stage are 28 U.S.C. § 1983 causes of action against the Town of Oyster Bay (the "Town"), the Town of Oyster Bay Department of Planning and Development (the "Town Department"), and several individual Town employees.  Presently before the Court is the Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Fed. R. Civ. P. 56" or "Rule 56") dismissing the complaint.  For the reasons set forth below, the motion is granted.

## I.  BACKGROUND

### A.  Factual Background

The following facts are drawn from the evidence in this case, including the residential contract of sale, the communications between the parties, the Rule 56.1 statements, and the deposition transcripts.  The Defendants oppose the Plaintiffs' use of one particular deposition transcript in support of their opposition to the Defendants' summary judgment motion—that of prior defendant Vincent Aquilino—because they claim that they were unable to depose Vincent Aquilino themselves.  Certainly, if the non-movant had not had the opportunity to conduct certain discovery, that party could seek an order pursuant to Fed. R. Civ. P. 56(f), which has

2

been interpreted "to provide that when a party facing an adversary's motion for summary

judgment reasonably advises the court that it needs discovery to be able to present facts needed

to defend the motion, the court should defer decision of the motion until the party has had the

opportunity to take discovery and rebut the motion." G-I Holdings, Inc. v. Baron & Budd, No.

01 Civ. 0216, 2002 WL 31251702, at *4 (S.D.N.Y. Oct. 8, 2002).  However, here it is the

movant—the Defendants—that are claiming that they were denied an opportunity to conduct

certain discovery, namely deposing Vincent Aquilino.  Cf. Connecticut Indemnity Co. v. 21st

Century Transport Co., 186 F. Supp. 2d 264 (E.D.N.Y. 2002) (denying plaintiff's argument that

as a matter of law the defendant could not succeed on a motion for summary judgment where the

plaintiff had not had the opportunity to depose affiants on whose affidavits a summary judgment

motion was based because the plaintiff had opportunity to depose affiants and did not).  In any

event, the Court need not determine whether it is appropriate to consider the testimony of

Vincent Aquilino when reviewing the facts that underlie the instant motion.  This is because even

if the Court considers this particular evidence, it would not change the outcome of the motion for

summary judgment.

Vincent and Diane Aquilino purchased 59 Larabee Avenue, Oyster Bay, New York (the

"Property") in November 1999.  The Property consists of a two-family dwelling and a detached

garage.  After they purchased the property, the Aquilinos obtained two building permits—one for

the house and one for the garage—dated February 22, 2000.  The building permits expired in

2001, and it appears that much of the construction on the Property by the Aquilinos occurred

after the last final inspection was performed by the Town on February 14, 2001.  In this regard,

some time after the Town had conducted its last official inspection of the garage, Vincent

Aquilino made several structural improvements to the garage without informing the Town.  (Def.

Ex. O.)  Specifically, Aquilino admitted that he installed a bathroom on the second floor of the

garage as well as a permanent set of steps after the Town's final inspection.  One of the

individual defendants, Tim Zikes, confirmed in his deposition that Aquilino never applied for a

permit to legalize the garage bathroom.

The Plaintiffs Julie Lamothe and her son Justin Lamothe are the current joint owners of

the Property.  The Plaintiffs purchased this property on April 14, 2005 from the Aquilinos

pursuant to a Residential Contract of Sale signed by all the parties to the transaction.  (Def. Ex.

C.)  Prior to the sale, in March 2005, Vincent Aquilino was issued a Certification of Occupancy

("CO") by the Town.  (Pl. Ex. 6 & 22.)

During the real estate transaction, the Plaintiffs were represented by an attorney.  The

Contract of Sale stated that the Plaintiffs were fully aware of the physical condition of the state

of the repair of the house and the garage, based on their own inspection and investigation.  In this

regard, the Contract of Sale stated:

> 12. Condition of Property
>
> Purchaser acknowledges and represents that Purchaser is fully
> aware of the physical condition and state of repair of the Premises
> and of all other property included in this sale, based on Purchaser's
> own inspection and investigation thereof, and that Purchaser is
> entering into this contract based solely upon such inspection and
> investigation and not upon any information, data, statements or
> representations, written or oral, as to the physical condition, state
> of repair, use, cost of operation, or any other matter related to the
> Premises or the other property included in the sale, given or made
> by Seller or its representatives, and shall accept the same "as is" in
> their present condition and current state of repair, subject to
> reasonable use, wear, tear and natural deterioration between the
> date hereof and the date of Closing . . .

(Def. Ex. C., Article 12.)  The Plaintiffs also did not receive a written disclosure statement that is

ordinarily required under New York State law to be given by the sellers of real property to

purchasers, instead choosing to receive a $500 credit from the purchase price.  (Def. Ex. C., Rider at Article 47.)

In March 2005, Ms. Lamothe hired a private home inspection company, Safe Harbor Inspections, to inspect the property for her.  (Def. Ex. F.)  In her deposition, Ms. Lamothe stated that she did not actually read this Home Inspection Report.  Instead, she "just went over the items with the Home Inspector."  (Transcript of Julie Lamothe ("JL Tr.") at 294.)  She also testified that she did not rely on the Home Inspection Report when deciding to purchase the property.  There is no dispute that the Report did include the observation that there were three sump pumps that had been placed into small wells in the concrete floor in the basement.  In addition, Ms. Lamothe also stated in her deposition that she did not go to the Town Department to review any records on file for the property or speak to anyone at the Department before going ahead with the $700,000 purchase.  (JL Tr. at 285–86.)  The Plaintiffs closed on the property on April 14, 2005.  (Def. Ex. G.)

Subsequent to the purchase of the home, in October 2005, it rained heavily for seven continuous days and the Property had substantial flooding in the basement of the house.  (JL Tr. at 395–99.)  As a result of this flooding, Ms. Lamothe visited the Town's offices and began researching and reviewing the contents of the file for the Property that was maintained by the Town Department.  It was the result of this post-purchase investigation that Ms. Lamothe became aware that certain structural changes were made to the home by the sellers of the Property without obtaining the proper permits from the Town and without the Town's knowledge or consent.

In November 2006, the Nassau County Department of Assessment received a telephone complaint from a Lamothes' neighbor regarding the Plaintiffs' alleged "illegal apartment" above

the garage.  (Def. Ex. I.)  On December 11, 2006, the Chairman of the Nassau County Board of

Assessors made a formal request for the Town to investigate this complaint and determine if

there was an illegal apartment.  (Def. Ex. K.)  In response to this request, on December 27, 2006,

the Town Supervisor's Office sent an inter-departmental memorandum to the Defendant Jack

Libert, Commissioner of the Town Department, asking him to investigate possible illegal

accessory apartments in a number of different towns, including at the Property.  (Def. Ex. L.)

On an unspecified date, the Town Zoning Inspector Eileen Cannizzaro contacted Ms.

Lamothe to make an appointment to inspect the garage.  (Cannizzaro Dep., at 13–17.)  On

February 9, 2007, Cannizzaro entered the garage with Ms. Lamothe and observed evidence that

the second floor had been converted to a habitable space, including a permanent staircase leading

from the first floor to the second floor.  (Id. at 18–19.)  The garage was not an "illegal

apartment" as defined by the Town Code, because there was no full kitchen, but Ms. Lamothe

was nevertheless given a summons for having general living space on the second floor of the

garage without an appropriate CO.  (Def. Ex. J.)  It appears undisputed that both the permanent

staircase and bath in the garage were installed by Vincent Aquilino, the former owner.

On April 9, 2007, Michael Bathie, a Plumbing Inspector for the Town, inspected the

premises and found that the three sump pumps that had been installed in the basement by

Vincent Aquilino violated the Town's Building Code because there had been no permits

obtained to install them.  On that same date, Joe Spano also inspected the premises and found

that there were several other Town Code violations, including: (1) the garage bathroom lacked

the requisite ceiling height; (2) there was no vent for the garage bathroom visible through the

roof; and (3) the hanging gas unit and electric hot water heater in the garage required a permit.

(Pl. Ex. 12.)  According to the Plaintiffs, if an appropriate inspection of the premises had

6

occurred before the CO was issued in March 2005, then these violations would have been discovered and no CO would have been issued.

Julie Lamothe contacted Jack Libert, the Commissioner of the Town Department, on several occasions sometime between 2005–2007 to make him aware of the flooding problems she experienced at the Property. (Lipert Dep. at 8–9.) At some unspecified time, Ms. Lamothe began to threaten Town officials with legal action. The earliest evidence to support these threats is an email from Lamothe to Stephen Mori, an individual Defendant who is a Construction Manager for the Town, dated May 25, 2007, in which she writes that she "offered an opportunity to resolve this matter without attorneys and the court system and . . . [that she was] instructing [her] attorney to proceed." (Pl. Ex. 17.) In addition, a copy of a telephone message slip left for Libert on August 21, 2007 states that Ms. Lamothe had retained an attorney and was considering suing for civil racketeering. (Def. Ex. Q.) Thus, it appears that Lamothe began to threaten legal action against the Town after the Town had inspected her garage and uncovered the Code violations.

The Plaintiffs claim that the criminal charges issued by Inspector Cannizzaro to Lamothe for building without a permit should have been issued to Aquilino as the builder and prior homeowner at the time of the installation. Instead, Lamothe was forced to appear in court 27 times, and three arrest warrants were issued to her for failing to appear for court dates. In addition, as Ms. Lamothe rented out the premises, she had to appear in Court due to complaints filed by her tenants because of the constant flooding. The Plaintiffs claim that the actions taken by the Town with regard to pursuing the Code violations were in retaliation for her threatening legal action and that she was subject to selective enforcement in violation of the equal protection clause.

7

B.  **Procedural Background**

On May 21, 2008, the Plaintiffs commenced this action against the Town, the Town

Department, and several Town officials, both in their official and individual capacities (the

"municipal defendants").  In addition, at the initial stage of this case, the Plaintiffs also brought

claims against the Aquilinos, the sellers of the home.  The Plaintiffs asserted three state law

claims against the Aquilinos for common law fraud, aiding and abetting fraud, and conspiracy to

commit fraud.  The Plaintiffs also alleged two 42 U.S.C. § 1983 federal causes of action against

the municipal defendants.

On July 10, 2009, the Court granted the Aquilinos' motion to dismiss the cause of action

for fraud, finding that the allegations lacked the requisite particularity under Fed. R. Civ. P. 9

and that the specific disclaimer in the Residential Contract of Sale between the parties bolstered

the application of New York's rule of *caveat emptor*.  The dismissal of the fraud cause of action

necessarily led the Court to also dismiss the causes of action for aiding and abetting fraud and for

civil conspiracy to commit fraud asserted against all of the Defendants, because those counts

could not stand alone after the main fraud claim against the direct actors was dismissed.

Therefore, the only claims that currently remain against the municipal defendants are: (1) Section

1983 causes of action for the deprivation of the Plaintiffs' constitutional rights to equal

protection of the laws and substantive due process, and (2) aiding and abetting such violations.

On January 8, 2010, after the Court rendered its decision on the motion to dismiss, the

Plaintiffs' counsel Steven Morelli, Esq. moved the Court to substitute Andrew Crabtree, Esq. as

the attorney of record for the Plaintiffs, which the Court granted the following day.  Mr. Morelli

did not state any explanation for the substitution.  However, the Plaintiffs have notified the Court

that they have a legal malpractice suit pending against Mr. Morelli stemming from Mr. Morelli's representation in this case.

Subsequently, on August 31, 2010, Andrew Crabtree also moved the Court for leave to withdraw as counsel of record. Mr. Crabtree stated in his Declaration in Support of Application for Leave to Withdraw as Counsel of Record that the reasons for his withdrawal were his "inability to effectively communicate with [his] clients, and their disregard of [his] advice, including Plaintiffs' numerous unauthorized *ex parte* communications with this Court." (Docket Entry No. 86-2.) Following Mr. Crabtree's withdrawal, over the next eleven months, the Plaintiffs attempted to procure new counsel. In a final letter to the Court dated July 1, 2011, Ms. Lamothe noted that they were "speaking to other attorneys" but were having trouble finding "suitable legal counsel." (Docket Entry No. 100.) She also wrote that "there will be a document on your desk by Monday, July 25th, if I have to write it myself." (Docket Entry No. 100.)

On July 27, 2011, the Plaintiffs proceeding *pro se* moved this Court to file an amended complaint. On October 19, 2011, this Court denied the motion to amend. On November 3, 2011, the Plaintiffs obtained a new attorney, Vincent R. Fontana, Esq.

On March 21, 2012, the instant motion for summary judgment was filed by all the defendants who have made an appearance in this case: namely, the Town, the Town Department, Tim Zikes, Mike Rathie, Joe Spano, and Jack Libert. Three individual defendants––Lynn Berge, Jim Laren, and Stephen Mori––have not appeared in this action. The Plaintiffs have made no attempt to move for a default judgment against these three individuals and, in any event, there is no indication on the docket that these three individuals have been properly served with a summons and complaint. Therefore, the Court now dismisses the complaint against these three individual defendants, namely Lynn Berge, Jim Laren, and Stephanie Mori. The Court will

now proceed to assess the merits of the motion for summary judgment with regard to the defendants who have appeared.

## II. DISCUSSION

### A. <u>Legal Standard on a Motion for Summary Judgment</u>

It is well-settled that summary judgment under the provisions of Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir. 1995) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and <u>Ramseur v. Chase Manhattan Bank</u>, 865 F.2d 460, 465 (2d Cir. 1989)). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. <u>Matsushita</u>, 475 U.S. at 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538. Summary judgment is

appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted).

Of importance in this case, a court is not required to draw all inferences in the nonmovant's favor, but only all *reasonable* inferences. A party may not avoid summary judgment with "assertions that are conclusory or based on speculation." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (internal citations omitted).

**B. Section 1983 Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). The basis of the Plaintiffs' equal protection claim is that as a result of, and in retaliation for, Ms. Lamothe's threats to bring a federal lawsuit to expose the alleged lack of diligence the Town demonstrated with regard to Mr. Aquilino's construction of the house, the Town began selectively enforcing the Town Code against them. (JL Tr. at 115, 158, 377.) This claim may be categorized as either an equal protection selective enforcement claim or "class of one" claim.

"To establish either claim, [the Plaintiffs] must show both that [they were] treated differently than other persons who were similarly situated and that such differential treatment was either without rational basis (a "class of one" claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)." Casciani v. Nesbitt, 392 Fed App'x 887, 888 (2d Cir. 2011); see Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004) (describing elements of "class of one" claim); Zahra v. Town of Southold, 48 F.3d 674, 683 (2d

Cir. 1995) (describing elements of selective enforcement claim).  Thus, both of these theories

require a plaintiff to show differential treatment from other "similarly situated" individuals.

Although determining whether parties are similarly situated is typically "a fact-intensive

inquiry," Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001), "[a] court

may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation

. . . where no reasonable jury could find that the persons to whom the plaintiff[s] compare[]

[themselves] are similarly situated," Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006);

accord Vassallo, 591 F. Supp. 2d at 184.  At the summary judgment stage, "plaintiff[s] must

present evidence comparing [themselves] to individuals that are 'similarly situated in all material

respects.'"  Sebold v. City of Middletown, No. 05 Civ. 1205, 2007 WL 2782527, at *26, 2007

U.S. Dist. LEXIS 70081, at *81 (D. Conn. Sept. 21, 2007) (quoting Graham v. Long Island R.R.,

230 F.3d 34, 39 (2d Cir. 2000)).

The Plaintiffs appear to be asserting both a selective enforcement claim and a class of one

claim.  "While the Second Circuit has not resolved the question of whether there truly is a

distinction between selective enforcement and class of one equal protection theories, courts in

this circuit have repeatedly treated them as distinct theories with distinct elements of proof and

have accordingly evaluated them as separate claims."  Bonenfant v. Kewer, No. 05 Civ. 01508,

2007 WL 2492030, at *8, 2007 U.S. Dist. LEXIS 64104, at *24 (D. Conn. Aug. 30, 2007)

(collecting cases).  Therefore, the Court will address each claim separately

### 1.  Selective Enforcement

The Second Circuit has "described selective enforcement as a 'murky corner of equal

protection law in which there are surprisingly few cases.'"  Diesel v. Town of Lewisboro, 232

F.3d 92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980)).

Yet, it is well-settled that to state a valid selective enforcement claim under the Equal Protection Clause, a plaintiff must plausibly allege: (1) she was treated differently than others similarly situated; and (2) the selective treatment was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004); see also Doninger v. Niehoff, 642 F.3d 335, 357 (2d Cir. 2011).

Here, the Defendants contend that the Plaintiffs have failed to show that they were treated differently than others similarly situated. See Church of Am. Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 210–11 (2d Cir. 2004) (holding that differential treatment is a "prerequisite" to selective enforcement claim); see also Goldfarb v. Town of W. Hartford, 474 F. Supp. 2d 356, 368 (D. Conn. 2007) ("demonstrating that a plaintiff has been treated differently is the *sine qua non* of a LeClair 'selective enforcement' violation."). Due to the fact that arguably the Plaintiffs have failed to produce evidence of anyone similarly situated to them in order to prevail on their equal protection claim, the Defendants argue that this glaring defect is fatal and requires dismissal of the claim. See Bletter v. Inc. Village of Westhampton Beach, 88 F. Supp. 2d 1, 26 (E.D.N.Y. 2000) (Spatt, J.) ("Nothing in Bletter's complaint can be read to allege that she personally was treated differently from other homeowners by the Village.").

In their opposition, the Plaintiffs contend that Vincent and Diane Aquilino—the former owners of the Property—are similarly situated to themselves. To put it simply, the Plaintiffs assert that these previous homeowners benefitted from the Town's alleged deliberate failure in processing the building applications and permits and did not bring any actions against the Aquilinos with regard to Building Code violations. On the other hand, the Plaintiffs—the present owners of the Property—have been subject to the Town issuing criminal charges against

them for Building Code violations.  This, the Plaintiffs claim, is the differential treatment

towards the Lamothes, and hence a proper basis for their equal protection claim.  (See Pls. Mem.

at 16 ("Although no action was taken against Aquilino for these obvious code violations,

numerous, frivolous violations were issued against the plaintiffs after they purchased the

property.").)

There is no doubt that the previous occupants of the premises, the Aquilinos, violated

certain building codes and that the Village did not enforce these restrictions against them.

However, the Second Circuit has held that the municipality's knowledge of violations committed

by those alleged to be similarly situated is crucial.  In the context of selective enforcement of

land use restrictions, the Second Circuit held that a plaintiff would be "hard pressed" to

demonstrate selective treatment without also demonstrating the municipality's knowledge of the

other, unenforced violations.  See LaTrieste Rest. v. Vill. of Port Chester, 188 F.3d 65, 69 (2d

Cir. 1999); see, e.g., Zavatsky v. Anderson, No. 00 Civ. 844, 2004 WL 936170, at *8–*10, 2004

U.S. Dist. LEXIS 7440, at *23–*29 (D. Conn. Mar. 8, 2004) (denying summary judgment where

material issues of fact remained as to defendant's knowledge of similarly situated individuals

treated differently from plaintiff).  Thus, the Plaintiffs "cannot establish an equal protection

violation unless [they] show[] that the [Town] consciously applied a different standard of

enforcement to similarly situated [homeowners]."  LaTrieste, 188 F.3d at 70.

Here, there is no evidence to demonstrate that the Town was aware of the building code

violations when the Aquilinos were the homeowners.  Without this evidence of knowledge on

the part of the Town, the Plaintiffs' claim of selective enforcement cannot succeed.  Id. ("Absent

a showing that the Village knew of other violations, but declined to prosecute them, LaTrieste

would ordinarily be unable to show that it was treated selectively."); see also Abel v. Morabito,

No. 04 Civ. 7284, 2009 WL 321007, at *6 (S.D.N.Y. Feb. 10, 2009) ("Plaintiff has not offered

any evidence that the individual defendants—except perhaps Defendant Morabito—had the

requisite knowledge at the time they voted to sue him, and Defendants have offered affirmative

evidence to the contrary.").

Of importance, the Second Circuit also stated in LaTrieste that:

> We do not hold that knowledge will be required in every case.  It is conceivable that selective treatment could be shown where, for example, proof was offered that a municipality did not know of prior violations because it adhered to a see-no-evil policy of not enforcing an ordinance, and then abandoned that policy with respect to a violator engaged in protected activity.

LaTrieste, 188 F.3d at 70 n.1.  However, as in LaTrieste, the Plaintiffs have not explicitly called

the Court's attention to proof supporting this, or any other such alternative theory of selective

treatment.  The Lamothes do point out that the Town did not require a final inspection before a

CO was issued, and this permitted a CO to be issued without uncovering certain structural

deficiencies and Code violations.  But the existence of this situation does not prove that there

was a "see-no-evil policy" of not enforcing building code violations.  While it may an unwise

policy and possibly a ground for a negligence cause of action, it does not evidence ostrich-like

behavior.

Therefore, the Defendants' motion for summary judgment with regard to the Plaintiffs'

Section 1983 equal protective claim premised on a selective enforcement theory is granted and

that claim is dismissed.

**2. Class of One**

A class of one claim exists "where the plaintiff alleges that she has been intentionally

treated differently from others similarly situated and that there is no rational basis for the

difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073,

145 L. Ed. 2d 1060 (2000).  Thus, to succeed on a class of one claim, a plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (quoting Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), abrogated on other grounds, Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008)).  In addition, "class of one" plaintiffs must show "intentional disparate treatment," in that defendants "knew that they were treating [plaintiffs] differently from anyone else."  Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001).  Finally, and most importantly, a plaintiff must demonstrate that the governmental action was "irrational and wholly arbitrary" or motivated by animus toward that plaintiff.

In Prestopnik v. Whelan, 249 Fed. App'x 210 (2d Cir. 2007), the Second Circuit explained the difference between "class of one" equal protection claims and historic equal protection claims:

> "The Equal Protection Clause requires that the government treat all similarly situated people alike."  Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).  While this clause "is most commonly used to bring claims alleging discrimination based on membership in a protected class," it may also be used to bring a "class of one" equal protection claim.  Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005); see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).  In a "class of one" case, the plaintiff uses "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain."  Neilson, 409 F.3d at 105.

16

Id. at 212–13.

As an initial matter, the Plaintiffs' class of one claim fails because, as with their selective enforcement claim, the Lamothes cannot show that they were treated differently than similarly situated individuals.  If the Plaintiffs fail to satisfy the similarly situated element of a selective enforcement claim, they cannot satisfy it for a class of one claim.  Everitt v. DeMarco, 704 F. Supp. 2d 122, 135 (D. Conn. 2010) ("The Court holds that the Plaintiffs' equal protection claim fails under either a selective enforcement or 'class of one' theory because they have neither alleged nor produced any evidence that they were treated differently from similarly situated individuals.").

Moreover, the third element of a class of one claim is the most problematic for the Plaintiffs to succeed in this particular case.  Specifically, in Engquist v. Oregon Department of Agriculture, the Supreme Court held that plaintiffs asserting a class of one claim must show that the differential treatment received resulted from non-discretionary state action:

> There are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

553 U.S. 591, 603, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008); see also Siao–Pao v. Connolly, 564 F. Supp. 2d 232, 245 (S.D.N.Y. 2008) ("Additionally, the Supreme Court recently clarified the Olech holding by limiting class of one claims in contexts characterized by individualized and subjective determinations . . .").

The differential treatment at issue here between the Aquilinos and the Lamothes—the issuance of summonses for building code violations—is a discretionary act. See Engquist, 553 U.S. at 603–04, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (confirming that the issuance of tickets by law enforcement officials is a discretionary act, because "allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action"); DePietro v. City of N.Y., No. 09 Civ. 932, 2010 WL 449096, at *10 (E.D.N.Y. Feb. 2, 2010) ("When officials act within their discretion, basing their decision on a variety of factors that could yield different results on a case by case basis, the rationale of Engquist precludes a class of one challenge.").

Because a class of one claim cannot be based on treatment that was the result of a discretionary or subjective decision, under the facts of this case, the Plaintiffs have not shown that the building code violations they faced is at all distinguishable from the discretionary act of issuing tickets. Accordingly, the Plaintiffs' class of one claim fails to survive summary judgment. See Casciani, 659 F. Supp. 2d at 457 ("Even after the ordinance was passed, any action taken by the Town to enforce the ordinance was necessarily discretionary."); Tarantino, 615 F. Supp. 2d at 117 & n.11 ("[I]n a class-of-one case, the plaintiff must show that the difference in treatment resulted from non-discretionary governmental action. . . . Enforcement of the Code provisions at issue here clearly involved a degree of discretion on the part of the code enforcement officer, Aiken [and therefore] this claim must therefore be dismissed against all the defendants."); see also Occhionero v. City of Fresno, No. 05 Civ. 1184, 2008 WL 2690431, at *9 (E.D. Cal. July 3, 2008) ("This Court will not legislate a class-of-one equal protection claim

18

under the guise of a First Amendment retaliation claim to permit second guessing of the City's code enforcement measures at issue here.").

The Plaintiffs contend in opposition "[w]hile the issuance of a Building Permit may be a discretionary act, the issuance of a Certificate of Occupancy is not." (Pl. Opp. at 14.) However, this assertion suggests a misapprehension of the relevant discretionary act. The issuance of the CO to the Aquilinos, rightly or wrongly, does not form the basis of the alleged differential treatment here. The Lamothes did not apply for a CO and one was never granted to them. Rather, the equal protection claim asserted by the Plaintiffs is that the Town did not pursue building code violations against the Aquilinos but only against the Lamothes, allegedly in retaliation for Ms. Lamothe exposing issues with regard to the CO. Even the Plaintiffs appear to recognize this distinction in their memorandum. (See Pls. Opp. at 15 ("there can be no dispute that defendants intended to bring criminal charges against plaintiffs for the alleged violation of various provisions of the State's and Town's Building Codes. Furthermore, there can be no dispute that these same defendants decided not to bring these very same charges against the Aquilinos. Therefore, this disparate treatment is without justification . . .").

Therefore, the Court grants the Defendants' motion for summary judgment dismissing the Plaintiffs' Section 1983 equal protection claim premised on a class of one theory. As such, all the Plaintiffs' Section 1983 equal protection claims against all of the Defendants are dismissed.

## C. **Section 1983 Substantive Due Process**

Next, the Defendants assert that the Plaintiffs cannot prevail on their substantive due process claim.

"Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is

incorrect or ill advised." Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995).

Thus, to prevail on this claim, the Plaintiffs must demonstrate that the Defendants "so grossly

abused their authority that they deprived him of a constitutionally protected property interest."

Rackley, 186 F. Supp. 2d. at 479.  Such abuse occurs only where the government action

challenged is so outrageous and arbitrary that it "shocks the conscious" or suggests a "gross

abuse of governmental authority."  Kuck v. Danaher, 600 F.3d 159, 167 (2d Cir. 2010).

In order to state a substantive due process claim for deprivation of property, "a party must

first establish that he had a valid 'property interest' in a benefit that was entitled to constitutional

protection."  Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir. 1995) (quoting Brady v.

Town of Colchester, 863 F.2d 205, 211–12 (2d Cir. 1988)); see also West Farms Assoc. v. State

Traffic Com., 951 F.2d 469, 472 (2d Cir. 1991) ("[A] plaintiff may not successfully claim a

deprivation of property without due process absent the identification of a protected property

interest.").

The property interest asserted by the Plaintiffs is "the granting or denial of the permits

and final certificates of occupancy."  (Pl. Opp. at 20.)  See Seabrook v. City of N.Y., 509 F.

Supp. 2d 393, 403 (S.D.N.Y. 2007) ("While not clearly articulated, plaintiffs appear to argue that

the New York City Charter creates a property interest in (1) proper enforcement of housing

regulations and adequate home inspections, and (2) issuance of Certificates of Occupancy only

upon compliance with applicable regulations.").  Apparently, the Plaintiffs do not even attempt

to argue that there is a property interest with regard to the enforcement of housing regulations,

because it is clear that this "does not create a protected property interest."  Id. at 404 ("Under

plaintiffs' logic, each time an agency, whose duties are defined in the N.Y.C. Charter, fails to

satisfy an obligation or improperly undertakes a responsibility, it constitutes a due process

claim."); see Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 176 (2d Cir. 1991) ("discretion over

the conferral of a governmental benefit . . . is fatal to a claim of entitlement to that benefit").

      However, even if this Court were to find that the Plaintiffs have a constitutionally

protected property interest in the granting or denying of a CO, and even assuming that the CO

was wrongfully granted in this particular case in violation of the Town code, "the mere violation

of a state law does not automatically give rise to a violation of federal constitutional rights."

Zahra, 48 F.3d at 682.  Certainly, as another district court in this Circuit noted, "[a] plaintiff can

claim a due process violation where a Certificate was wrongfully withheld, at least where the

plaintiff can show a clear entitlement to a Certificate under state law."  Assoko v. City of New

York, 539 F. Supp. 2d 728, 739 (S.D.N.Y. 2008); see O'Mara v. Town of Wappinger, 485 F.3d

693, 700 (2d Cir. 2007) (recognizing but denying substantive due process claim because plaintiff

failed to show clear entitlement to issuance of certificate of occupancy).  However, the Town is

alleged to have wrongfully issued a CO, thus allowing the Plaintiffs to purchase a defective

home.

> This claim cannot sustain a substantive due process violation
> because the issuance of a Certificate, even if in violation of
> municipal code, does not cause an injury attributable to the
> government that rises to a constitutional level.  Unlike the case
> where a Certificate is wrongfully withheld, the City did not
> affirmatively deny Plaintiffs any benefit or cause Plaintiffs any
> harm.

Assoko, 539 F. Supp. 2d at 739.  "A municipality is responsible for injuries caused by its actions,

and even the wrongful issuance of a Certificate does not cause an injury to the recipient

attributable to the government, let alone an injury rising to a constitutional level.  To the

contrary, it bestows a clear benefit on the recipient."  Id.  Thus, in the Court's view, even if the

Town wrongfully issued a CO to Aquilino, and thus there was a violation of the Town code, this

does not amount to a due process violation.  See Bletter v. Inc. Vill. of Westhampton Beach, 88
F.Supp.2d 21 (E.D.N.Y. 2000) (Spatt, J.) (denying such a due process claim after reinterpreting it
as a claim of a property interest in proper certification procedures, finding that there is no
property interest in the procedures leading up to the issuance of a certificate of occupancy).

    Moreover, in the Court's view, even if the Town wrongfully issued a CO when it should
not have under the Town code, such behavior does not qualify as "conscience-shocking," or
"oppressive in the constitutional sense."  Lowrance v. C.O. S. Achtyl, 20 F.3d 529, 537 (2d Cir.
1994).  See Conde v. Town of Sharon, 421 Fed App'x 26, 28 (2d Cir. 2011) ("Furthermore, even
if there were a constitutionally protected right at issue, Conde has failed to point to any facts
establishing that the town's conduct with respect to her request to build a gate was arbitrary,
conscience-shocking, or oppressive.").

    Therefore, the Defendants' motion for summary judgment dismissing the substantive due
process claim is granted.

**D.  Municipal Liability**

    For the reasons set forth above, the Plaintiffs have failed to establish the violation of any
protected constitutional rights by any of the Defendants.  "[I]t is fundamental that [Section] 1983
creates no independent, substantive constitutional rights but rather is a vehicle for enforcing such
rights."  Rosa R. v. Connelly, 889 F.2d 435, 440 (2d Cir. 1989).  If there is no underlying
constitutional violation, then the Plaintiffs' claims for municipal liability against the Town and
Department must ultimately fail.  See Khan v. Ryan, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001)
("If there is no underlying constitutional violation by a municipal official, the municipality is not
liable"); Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district
court properly found no underlying constitutional violation, its decision not to address the

municipal defendants' liability under Monell was entirely correct"); see also Collins v. City of Harker Heights, 503 U.S. 115, 121, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992).

Because the Section 1983 equal protection and due process claims have been dismissed, the Court need not independently analyze whether there can be municipal liability against the Town under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

## E.  Individual Liability

With regard to the liability of the individual defendants, the Defendants make several arguments as to their personal involvement with the Lamothes and the circumstances of this case, as well as to issues of qualified immunity.  However, as with municipal liability, because the Plaintiffs have failed to show that the individual defendants caused them to be deprived of a federal right, any Section 1983 claim against the individual defendants necessarily fails.  Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) ("In order to establish individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right."); see Dunk v. Brower, No. 07 Civ. 7087, 2009 WL 650352, at *8 (S.D.N.Y. March 12, 2009) (observing that the "Supreme Court has found that if there is no constitutional violation, there can be no liability, either on the part of the individual officer of the government body).  Thus, the Court need not address individual involvement or qualified immunity.  Accordingly, the Defendants motion for summary judgment dismissing the Plaintiffs' Section 1983 claims against the individual defendants is granted.

## F.  Negligent Issuance of a CO

Next, the Defendants assert that the Plaintiffs' tort-based claims are completely barred because a Notice of Claim required by General Municipal Law §50-e was never filed.  The

Plaintiffs do not even address this contention in their opposition.  The Court agrees that the Plaintiffs have failed to provide evidence of this requisite step and thus any claim premised on the negligent issuance of a CO is dismissed.

### G.  Second Cause of Action for Aiding and Abetting

Finally, the Defendants assert that the only remaining cause of action, namely for aiding and abetting the above constitutional violations, must be dismissed because if "those constitutional claims fail as a matter of law, as do any derivative claims based upon same." (Def. Mem. at 18.)  The Court agrees.  As such, the Plaintiffs' second cause of action against all of the Defendants for aiding and abetting the alleged constitutional violations is also dismissed.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendants' motion for summary judgment is granted in all respects and the complaint is dismissed in its entirety against all the Defendants; and it is further

**ORDERED**, that the Clerk of the Court is respectfully directed to mark this case as closed.


**SO ORDERED**.

Dated: Central Islip, New York
          December 27, 2012

_____/s/ Arthur D. Spatt_____
    ARTHUR D. SPATT
United States District Judge